Zimmerman, J.
 

 For a proper understanding and disposition of this case, which appears different to us now than it did upon the motion for certification, a narration of some of the salient facts contained in the bill of exceptions is essential.
 

 A promissory note for the sum of $2,000, dated February 1, 1926, due two years after date and bearing interest at 6% per annum, was executed by Charles L. Fredritz and Mary Ellen Fredritz, his wife, in favor of C. W. Hartman and delivered to him. Certain credits appear on the back thereof. This note was secured by a mortgage on real estate, which mortgage on its face purported to be a first mortgage but in fact was not.
 

 On October 5, 1934, Fredritz filed his petition in bankruptcy in the United States District Court, at Toledo. In the schedule of debts, Warren Hartman (C. W. Hartman) was listed as a secured creditor. Certain, proceedings were had upon such petition, which are not material here. On February 5, 1935, an amendment to the petition was filed under Section 203 (s), Title 11, U. S. Code, relating to farmer-debtors, and on the same date there was filed C. W. Hartman’s “Proof of Secured Debt,” setting forth the promissory note signed by Fredritz and the amount then due
 
 *495
 
 thereon. On March
 
 2,
 
 1935, a “Proof of Claim” was filed by or on behalf of C. W. Hartman, covering the same indebtedness. After some further proceedings, Fredritz, on January 20, 1936, filed his petition asking for “a full discharge from all debts provable against his estate, * * * except such debts as are excepted by law from such discharge.” No other steps to secure an order of final discharge were taken until March 5, 1943. .
 

 It further appears from the bill of exceptions that early in 1943 large sale bills were printed and distributed announcing that Charles L. Fredritz was quitting farming and that as owner he would hold a public sale of livestock, farming implements and farming accessories, Tuesday, March 2, 1943, on what was known as the Arnold Long farm. This announcement came to the attention of C. W. Hartman, who consulted an attorney with the result that a petition was filed on March 2, 1943, in the Court of Common Pleas of Seneca county by C. W. Hartman, as plaintiff, against Charles L. Fredritz, as defendant, praying judgment in the sum of $3,030, with interest, on the promissory note above described. On the same date an affidavit for attachment was filed by Hartman, in which it was. alleged,
 
 inter
 
 alia, that Fredritz was about to dispose of his property with intent to defraud his creditors. The affidavit was accompanied by a bond, and an order of attachment was issued to the sheriff of Seneca county, who appeared at the Fredritz sale a short time before it began.
 

 According to the testimony of several witnesses in the present action for damages, including Fredritz, the sheriff conferred privately with Fredritz, Sheidler, the auctioneer, and Meeker, the clerk, and informed them that he would do one of two things, either stop the sale or allow the sale to be held upon the agreement
 
 *496
 
 that the proceeds thereof would be paid into court. Fredritz assented to the second proposition and the sale was held.
 

 As to the fifteen acres of growing wheat on a nearby farm in which Fredritz had a half interest and as to a mower and hayrack, nothing formal was apparently done by way of attachment. Fredritz retained possession and control of the implements. • The wheat was harvested or combined in July by Fredritz and .another, whom he employed and paid, and was placed in a barn on the premises. About a month later the wheat and the mower were destroyed by a fire which consumed the barn.
 

 In the sheriff’s return and inventory on the order of attachment, the following statement appears:
 

 “In accordance with an agreement with Charles L. Fredritz and Eugene E. Meeker, clerk, proceeds from the sale of the following listed property was turned over to George R. Steinmetz, sheriff, on the following dates and in the following amounts:
 

 “March 3, 1943 — $1,361.79
 

 “March 5, 1943 — $ 400.00.”
 

 Sometime later, by order of the court, the above amounts were surrendered and paid over to Charles L.- Fredritz.
 

 Acting through counsel, Fredritz went to the federal court to secure his final discharge, and the order granting such discharge was filed April 10,1943.
 

 In directing a verdict for the defendants in the instant case and in rendering judgment in their'favor, the trial court took the general position, which was approved by the Court of Appeals, that there was a material and fatal variance between the allegations of the petition and the evidence offered, and that, since plaintiff had failed to show an attachment in conformity with the averments of his petition,- a case against
 
 *497
 
 the defendants on the theory adopted and pursued had not been established.
 

 Was such conclusion justifiable and correct?
 

 As outlined in the statement of facts, the plaintiff based his claim for damages on a wrongful seizure by attachment of his “goods and chattels.” Section 11826, General Code, requires that in executing an order of attachment on personal property which ‘ ‘ can be come at,” the attaching officer “shall take it into his custody, and
 
 hold
 
 it subject to the order of the court.” (Emphasis ours.)
 

 In other words, an order of attachment directed toward the goods and chattels of an alleged debtor ordinarily contemplates their impounding to accomplish a valid and effective attachment within the provisions of the law. The requirements are not met and no attachment of personal property occurs, where it is not actually taken into the custody of the officer levying the writ.
 
 Root
 
 v.
 
 Railroad Co.,
 
 45 Ohio St., 222, 12 N. E., 812.
 

 The rule is elementary that the evidence offered by a party must correspond substantially with the allegations of' his pleadings.
 
 Palmer
 
 v.
 
 Humiston,
 
 87 Ohio St., 401, 409, 101 N. E., 283, 285, 45 L. R. A. (N. S.), 640; 31 Ohio Jurisprudence, 965, Section 353.
 

 Damages were claimed by the plaintiff solely on the ground that there had been a wrongful and harmful attachment of his goods and chattels; the evidence offered upon trial failed to substantiate that claim, but showed another and entirely different situation.
 

 We find no prejudicial error in the judgments below respecting the phase of the case under discussion.
 

 Both the Court of Common Pleas and the Court of Appeals also entertained the view that even if there had been an attachment of plaintiff’s goods and chattels as alleged, it was not wrongful or unlawful under the circumstances.
 

 
 *498
 
 In its minutes the Court of Appeals said:
 

 “The record shows that the goods and chattels set forth in plaintiff’s petition were not levied upon by the sheriff. By agreement, the proceeds of the sale of the goods and chattels were delivered to the sheriff and held by him under his order of attachment.
 

 “Plaintiff not entitled to recover for money attached under the averments of the petition as there is fatal variance’ between the allegations of the petition and the evidence. * * *
 

 ‘ ‘ On February 5,1935, the plaintiff filed in the bankruptcy court his amended petition under Section 75 (s) asking he be adjudged a bankrupt. After filing said amended petition asking to be adjudged a bankrupt, the plaintiff failed to apply for or secure from the bankruptcy court, the stay provided for in clause 2 of Section 75 (s).”
 

 Then follows a quotation from 5 Collier on Bankruptcy (14 Ed.), 216, Section 75.34, in which it is stated that if a debtor fails to secure an order from the federal court staying proceedings, nonbankruptcy proceedings completed before a stay order is granted will not be invalidated.
 

 Being of opinion that the judgments below are supportable on the first ground’ advanced, we do not consider or pass upon the second.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Sohngen and Stewart, JJ., concur.